# United States District Court
# Northern District of Indiana
# Hammond Division

ADRIAN SANTOS, et al., )
)
        Plaintiffs, )
)
        v. )   Civil Action No. 2:10-CV-203 JVB
)
GEORGE PABEY, et al., )
)
        Defendants. )

**OPINION AND ORDER**

Defendants George Pabey, Francisco Rosado Jr., the City of East Chicago, Charles Pacurar, Adolfo Velez, and Richard Gomez have filed four motions for summary judgment in this case. The first motion (DE 41) is against Plaintiffs Adrian Santos, James Ventura, and Myrna Maldonado, all members of the East Chicago City Council, on their First Amendment claims. The motion is now fully briefed and is ripe for decision.

**A.**     **Legal Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B.     Background and Facts**

The facts relevant to this motion are undisputed. Plaintiffs Santos, Ventura, and Maldonado are all members of the East Chicago Common Council. Until he was terminated,

Plaintiff Santos held a job in the East Chicago Street Department at the same time he served on the Council. Plaintiff Ventura was, until his termination, simultaneously a Council member and the assistant director of the East Chicago Department of Parks and Recreation. The Street Department and the Department of Parks and Recreation are both agencies of the executive branch of East Chicago government. Plaintiff Maldonado worked as the Associate Director of Youth Services for the East Chicago Public Library at the same time she served on the Council. Plaintiffs allege that they lost their jobs with the City and the Library because as council members they voted contrary to Defendant Mayor George Pabey's wishes on several issues. Santos was demoted after he voted against the 2010 City budget and later terminated after he failed to vote according to Mayor Pabey's wishes on several other measures, including a proposed settlement of a lawsuit related to casino funds. Maldonado was discharged from her library job after she voted against the proposed settlement and in favor an ordinance giving the Council control over claims submitted to the City, contrary to Mayor Pabey's positions on those issues. Ventura's discharge came after he voted against the settlement ordinance and for the claims ordinance. Plaintiffs assert that their votes on Council matters constitute the exercise of their First Amendment rights and that they were discharged for exercising those rights.

**C.    Discussion**

Defendants maintain that even assuming the Plaintiffs were discharged because Mayor Pabey disagreed with their votes in the Council, they have failed to state a claim because the First Amendment does not give them the right to hold dual positions simultaneously within

3

competing branches of the same governmental entity.¹ They further argue that Plaintiffs' speech is not protected because they did not speak as private citizens and the City's interest as an employer outweighs their interests in commenting on matters of public concern. Moreover, according to Defendant Pabey, because there is no case recognizing a city council member's right to hold an executive branch position in the same municipality where he sits on the common council, he is entitled to qualified immunity.

Plaintiffs respond that they are not asserting a constitutional right to dual employment, but instead claim that as public employees they are entitled to First Amendment protection for their votes as council members. They further argue that Defendant Pabey is not entitled to qualified immunity because he had reasonable notice that firing them because of their votes as council members violated their First Amendment rights.

The Court analyzes Plaintiffs' rights under the *Pickering/Connick/Garcetti* line of Supreme Court cases, which establish the contours of a public employee's First Amendment rights.² In *Pickering v. Board of Ed. of Township High School Dist. 205*, 391 U.S. 563 (1968), the Supreme Court held that a teacher's speech on issues of public importance was protected by the First Amendment and could not serve as the basis for his dismissal. *Id.* at 574. The Court stated that a balance must be struck between the interests of the employee, as a citizen, in

---

¹It is difficult to see how Defendants' dual employment arguments have any application to Maldonaldo, who was employed not by the City of East Chicago, but rather with the East Chicago Public Library, a separate entity over which the City administration has no direct authority apart from the Mayor's power to appoint one of its seven board members. *See* Ind. Code §§ 36-12-2-2 and 36-12-2-14.

²Plaintiffs urge the Court to adopt the strict scrutiny test applied in *Vangra v. Brown*, 566 F.3d 515 (5th Cir. 2009), to a statute placing content based restrictions, including criminal sanctions, on the speech of elected officials for discussing public business outside a city council meeting. Because the instant case concerns termination of employment allegedly on account of the exercise of First Amendment rights rather than a statute regulating speech content, the Court determines that it should be analyzed under the *Pickering/Connick/Garcetti* line of cases.

commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.* at 568. In *Connick v. Myers*, 461 U.S. 138 (1983), the Supreme Court stated that First Amendment protection is afforded only to speech regarding matters of public concern but not to internal office affairs. *Id.* at 146. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), held that statements of public officials made pursuant to their official duties are not entitled to First Amendment protection against adverse employment actions.

The Court concludes that the speech for which Plaintiffs claim protection—their votes in the Council—does constitute speech protected by the First Amendment. Because their Council votes were not statements made pursuant to their official duties as employees of the City of East Chicago or the East Chicago Public Library, they were speaking as private citizens, albeit private citizens who are Common Council members.[3] It cannot reasonably be questioned that their votes on issues before the Council are matters of public concern.

Plaintiffs are not asking the Court to recognize a constitutional right to hold both legislative and administrative positions within the City of East Chicago. That would be the case if they were arguing that a speech-neutral, uniformly-applied City ban on holding a paid position in the City administration while serving on the Council violated their First Amendment rights. However, here the City of East Chicago apparently allows such dual employment as a general principle. Plaintiffs do not claim that they have been dismissed from their jobs simply because

---

[3]Defendants claim that because the council member Plaintiffs' spoke as elected officials, they were not speaking as private citizens. However, in the Court's view, the private citizen requirement exists to distinguish between communications pursuant to the official duties of state employment and speech outside that context. Because the speech for which the council member Plaintiffs seek First Amendment protection was not part of their duties as City or library employees they meet this requirement.

5

they are council members, but rather because of specific votes with which Mayor Pabey disagreed. Moreover, First Amendment protection in these circumstances does not guarantee the council members jobs within the executive branch—it simply recognizes their First Amendment rights on an equal footing with other public employees. As employees at will they are subject to termination, but not for expressing their views on matters of public concern through their Council votes, any more than they could be terminated on other impermissible grounds, such as race or national origin.

Defendants' arguments point out the problems inherent in a municipal policy permitting the employment or retention of council members in city administrative positions. However, if council members are generally allowed to serve in the administration at the same time they hold legislative office, they may not be subjected to adverse employment actions in retaliation for specific Council votes their bosses oppose unless the City's interest as an employer outweighs the employee's interest in commenting on matters of public concern.

The Court must now determine whether Plaintiffs' interests outweigh the interests of the City and Library as employees in promoting the efficiency of the public services they perform. The Seventh Circuit Court of Appeals instructs the Court to consider:

> 1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decisionmaking.

*Greer v. Amesqua*, 212 F.3d 358, 371 (7th Cir. 2000).[4] Moreover, the public employer has the burden of proving that its interest outweighs the employee's interest. *Gazarkiewicz v. Town of Kingsford Heights, Indiana*, 359 F.3d 933, 943 (7th Cir. 2004).

In claiming that Plaintiffs' dual positions negatively impact harmony and discipline in the workplace, once again Defendants offer argument as to why allowing dual employment might be inadvisable but have not explained how Plaintiffs' votes on public issues interfered with their jobs as city or library employees. Accordingly, the Court resolves this balancing test in favor of Plaintiffs.

Furthermore, Mayor Pabey is not entitled to qualified immunity in this instance. Qualified immunity serves to protect those public officials who have violated a constitutional right when the contours of that right were not sufficiently clear at the time to enable a reasonable official to know that his conduct was prohibited. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir 2007). The First Amendment right of a public employee to speak as a private citizen on matters of public concern without retaliation was clearly established in 2010 when these Plaintiffs lost their jobs. Nothing in the cases recognizing public employees' First Amendment rights would suggest to a reasonable public official that such rights do not exist when the speech takes place in the context of a vote as an elected council member.

---

[4] *Greer*, decided pre-*Garcetti*, listed as a seventh factor in the balancing test: "whether the speaker should be regarded as a member of the general public." *Id.* However after the Supreme Court's decision, the status of the speaker as a private citizen, as opposed to one speaking pursuant to his official duties as a public employee, is a *sine qua non* of First Amendment protection for the speech of public employees, not merely part of a balancing test. *See Garcetti*, 547 U.S. at 421.

**D.     Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment on the First Amendment claims of Plaintiffs Adrian Santos, James Ventura, and Myrna Maldonado (DE 41) is **DENIED.**

SO ORDERED on December 9, 2011.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
