United States District Court
Northern District of Indiana
Hammond Division

| | |
|---|---|
| ADRIAN SANTOS, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 2:10-CV-203 JVB |
| GEORGE PABEY, et al., | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on Defendants' motion for summary judgment with respect to the claims of Plaintiffs James Ventura and Adrian Santos (DE 45), Plaintiffs' motion to strike portions of Defendants' summary judgment evidence (DE 53), and Defendants' motion to strike portions of Plaintiffs' summary judgment evidence (DE 63). Because the parties have reached a settlement as to Santos's claims and he is no longer a party, the motion for summary judgment is denied as moot with respect to him. The following discussion deals only with Ventura's claim that his First Amendment rights were violated when he was fired from his City of East Chicago job because of some of his votes as a City Council member.

**A.     Legal Standard**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B.     Background and Facts**

Plaintiff Ventura is a member of the City of East Chicago Common Council. He was, until his termination on May 7, 2010, also assistant director of the East Chicago Parks and Recreation Department. Ventura claims that he was fired because he voted against a proposed settlement of a lawsuit related to casino funds and in favor of an ordinance giving the Council control over claims submitted to the City. Defendants assert that he was terminated in a

reduction in force that was necessary to stay within the budget.

The facts assumed to be true for the purpose of ruling on Defendants' motion for summary judgment are:

In January 2009, Ventura was demoted from director of recreation to assistant director, shortly after he spoke to Robert Garcia suggesting that Garcia run for president of the City Council. Mayor Pabey supported someone else for the position. The fact that Ventura supported Garcia for the position got back to Mayor Pabey, and three days later, Ventura was demoted.

In 2009 and 2010 Ventura voted contrary to the Mayor's positions on three measures before the City Council. He voted against approving the settlement of a lawsuit involving casino money, in favor of an ordinance to give the City Council approval of claims against the City, and against the Mayor's 2010 budget. Mayor Pabey let Ventura know that he was angry when Ventura told him he could not vote for the casino settlement. In an effort to gain Ventura's support, the Mayor spoke to Ventura on February 22, 2010, and March 3, 2010. The Mayor told Ventura he would give him a pay raise and a better job, as well as whatever Ventura needed for himself and his son (then also a city employee). The Mayor told Ventura he needed Ventura's votes and that he had better vote in line with the Mayor's position. Ventura voted against the casino settlement on March 3, 2010.

On May 7, 2010, Ventura received a letter from Defendant Rosado, the director of human resources for the City, informing him that his employment was terminated. Other City employees terminated on that date were Damien Ventura, James Ventura's son; Adrian Santos, another council member who voted against the casino settlement; and Javier Santos, Adrian Santos's son. Around the same time Myrna Maldonado, another council member who had voted against

the casino settlement, lost her job at the East Chicago Public Library.[1]

The terminations of James and Damien Ventura and Adrian and Javier Santos, were part of a reduction in the City's workforce ("RIF") that affected sixteen City employees. Some of the facts surrounding the implementation of the RIF are in dispute. Defendant Rosado claims that he spoke with Defendant Charles Pacurar, the City Controller, about a month before the RIF. According Rosado, Pacurar told him that Jim Bennet told Pacurar that spending needed to be cut very quickly in order to make the 2010 budget.

Pacurar denies that budget cuts were necessary at that time. Rosado claims that Pacurar initiated discussions about the May 2010 RIF, while Pacurar denies that he did so. According to Pacurar, Defendants Richard Gomez and Francisco Rosado came to him before the May 2010 RIF and wanted to show him a list of employees they were going to let go, explaining that the Mayor was going to make some reductions. In the other RIFs that occurred while Pacurar was controller, Pacurar would initiate the request to reduce the workforce because of budgetary constraints. For the May 2010 RIF no figure was established as a spending reduction goal.

Plaintiffs have moved to strike Rosado's statement recounting what he claims Pacurar said Benet told Pacurar about the need for prompt spending cuts. They argue that the statement consists of two levels of hearsay. Defendants counter that the evidence that Mr. Bennett considered a RIF necessary is not offered to prove that a RIF was in fact necessary, but rather to illuminate the Defendants' motives.

The Court agrees that to the extent the statement is offered to show the Defendants' motive in initiating a RIF, it is not hearsay. Accordingly, Plaintiffs' motion to strike the

---

[1] Damien Ventura, Adrian Santos, Javier Santos, and Maldonado were parties to this suit but have settled their claims.

statement is denied.

Kenneth Monroe, the superintendent of parks, and a member of Mayor Pabey's inner circle, recommended James Ventura for termination as part of the May 2010 RIF, stating that he never did anything and that they could do without him, but Mayor Pabey made the final decision as to who would be terminated. The record includes documents from Ventura's personnel file. Several relate to incidents that occurred when Ventura held previous City positions. Five relate to incidents that occurred in June, July, and August 2008, when Ventura worked in the Parks and Recreation Department. In a Corrective Action Form ("CAF") dated June 4, 2008, Monroe complained to Ventura that he tried to prevent Monroe from speaking to a member of Ventura's staff without Ventura being present. In another CAF, he took Ventura to task for using facilities without having completed the proper paperwork. Monroe also criticized Ventura for distributing documents without his approval and ordering brochures without a purchase order. In August 2008 Moore noted in a CAF that Ventura and his church group used a shelter in a park without having completed the paperwork to use the shelter. In another August CAF he recounted an incident in which he and Ventura had a confrontation over Ventura's after-hours use of facilities in defiance of Monroe's orders. Ventura's personnel file also includes three undated CAFs. In one Monroe complained that Ventura was not communicating with him but talked to the staff instead and that he told the staff that, as a councilman, he should receive any information he asked for. In another, Monroe informed Ventura he was not using proper procedure for handling donations to the Parks Department. In the final CAF, unsigned, but apparently written by Moore, it is noted that Ventura claims that he is the author's boss because he is a councilman. There is no evidence that Mayor Pabey reviewed Ventura's personnel file before making the

final decision to terminate him.

**C.     Discussion**

In order to survive a motion for summary judgment on a claim that his First Amendment rights were violated, a public employee must produce evidence that his speech was constitutionally protected, that he suffered a deprivation likely to deter free speech, and that the speech was a motivating factor in his employer's adverse action. *Valentino v. Village of S. Chi. Heights*, 575 F.3d 664, 670 (7th Cir. 2009).  *See also Brown v. Cook County*, 661 F.3d 333, 335 (7th Cir. 2011).  The Court has already determined, in its ruling on another motion for summary judgment in this case, that Ventura's votes in the city council constitute speech protected by the First Amendment.  There is no dispute that Ventura suffered a deprivation likely to deter free speech when he was terminated from his City job. Moreover, the Court determines that genuine disputes as to material facts, and as to the inferences to be drawn from undisputed facts, preclude summary judgment against Plaintiff James Ventura as to whether he was terminated because of his city council votes.

A reasonable jury could find implied threats to terminate Ventura in the Mayor's statements to him to convince him to vote according to the Mayor's wishes.  The conflicting evidence regarding how the RIF originated, its timing, and the testimony that it was not financially necessary would permit a reasonable jury to find that Ventura was included in the RIF because his city council votes displeased the Mayor.

Because the Court has determined that summary judgment should be denied without consideration of the evidence Defendants have moved to strike, the Court DENIES that motion

6

as moot without prejudice.

**D.     Conclusion**

Defendants' motion for summary judgment against Adrian Santos and James Ventura is DENIED as moot with respect to Adrian Santos and DENIED with respect to James Ventura (DE 45).  Plaintiffs' motion to strike is DENIED (DE 53).  Defendants' motion to strike (DE 63) is DENIED as moot without prejudice.

SO ORDERED on June 21, 2012.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge